IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN F. STOLZTFUS : CIVIL ACTION
:
v. :
:
MICHAEL J. ASTRUE : NO. 11-6056

MEMORANDUM

McLaughlin, J. May 1, 2013

  This case involves a decision by the Commissioner of Social Security that the plaintiff must pay back over $87,000 in disability payments he received during a period in which he was not eligible for them. The main issue in the case is whether the Commissioner should have waived recovery of the overpayment. The Commissioner should waive recovery of an overpayment when two requirements are met: (1) the overpaid individual was without fault in causing the overpayment; and (2) recovery of the overpayment would either defeat the purpose of the Act or be against equity and good conscience. 42 U.S.C. § 404(b). The Commissioner has found the plaintiff to be without fault and recovery would not defeat the purpose of the Act so the issue is whether recovery would be against equity and good conscience.

I. Factual Background

  The plaintiff filed an application for disability insurance benefits ("DIB") in April 1991. The Social Security Administration ("SSA") found him to be disabled due to a visual

impairment (blindness) and thus entitled to DIB as of March 1991. Tr. 29, 32.

In May 1994, the plaintiff began working for the Susquehanna Association for the Blind and Vision Impaired ("Susquehanna") as a material handler. Tr. 37. He testified that in February 2001, he was informed that due to an error by Susquehanna, the organization's employees were not paid for rest periods less than twenty minutes in violation of the Fair Labor Standards Act ("FLSA"). Tr. 37, 37, 203. To correct this error, Susquehanna paid the plaintiff retroactive wages for the twenty-four month period from March 1999 through February 2001. R. 34.

The SSA retroactively adjusted the plaintiff's earnings to reflect the additional wages paid to him. Tr. 58-59. This adjustment caused plaintiff's earnings to exceed the substantial gainful activity ("SGA") level for blind individuals. Tr. 60. Because this overpayment rendered the plaintiff ineligible for benefits as of April 2000, the SSA determined that he had erroneously received benefits from April 2000 through July 2004, when he reapplied for and was granted DIB. In the absence of this adjustment, the plaintiff's wages would have been below the maximum SGA level to receive DIB. Tr. 38, 78-97.

The SSA notified the plaintiff of this overpayment in 2005. In October 2006, the SSA adjusted the amount of overpayment after the plaintiff requested reconsideration, but

did not discharge the overpayment. On July 11, 2007, the plaintiff requested waiver of the overpayment on behalf of himself and his daughters in the total amount of $114,539.67 ($87,089.00 - the plaintiff's overpayment; $27,450.67 - the daughters' overpayment). R. 101. On October 29, 2008, the agency denied the plaintiff's request for waiver of the overpayment and the plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). R. 101, 105.

After a hearing on June 26, 2009, the ALJ found that the plaintiff was without fault in causing the overpayment, but that recovery would neither defeat the purpose of Title II, nor be against equity and good conscience. Tr. 27. The plaintiff requested a review of the ALJ's decision by the Appeals Council, which found that the plaintiff was not liable for the portion of the overpayment made to his daughters ($27,450.67), but affirmed the ALJ's finding that recovery of the plaintiff's portion of the repayment would neither defeat the purpose of Title II, nor be against equity and good conscience. Tr. 8-9, 12, 19-20. The Appeals Council's determination that the plaintiff must return this overpayment in the amount of $87,089.00 became the Commissioner's final decision. The plaintiff now seeks judicial review of this decision.

II. <u>Analysis</u>

   A.  <u>Statute and Regulations</u>

An overpayment occurs where an individual receives payment of benefits in excess of the amount due. 20 C.F.R. § 404.501(a). Whenever there is an overpayment of benefits, the Commissioner has a statutory obligation to recover the overpayment. 42 U.S.C. § 404(a)(1).

However, recovery of an overpayment is waived where two requirements are met. 42 U.S.C. § 404(b); 20 C.F.R. § 404-506(a). First, the overpaid individual must be without fault in causing the overpayment. <u>Id.</u> Fault by the agency does not relieve the overpaid individual from proving that he was without fault. 20 C.F.R. § 404.507.[1] Second, recovery of the overpayment must either defeat the purpose of the Act or be against equity and good conscience. <u>Id.</u>

The Commissioner's regulations state that to defeat the purpose of the Act under Title II means to deprive a person of income required for ordinary and necessary living expenses. 20 C.F.R. § 404.507(a). The regulations state that this determination depends on whether the person has an income or

---

[1] The regulations described two types of overpayments, deduction and entitlement overpayments. <u>Compare</u> 20 C.F.R. § 404.423 (defining a deduction overpayment) <u>with</u> 20 C.F.R. § 404.510a (defining an entitlement overpayment). This case involves an entitlement overpayment. As such, fault and without fault are governed by 20 C.F.R. §§ 404.507, 404.510a.

4

financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs.  Id.

According to the regulations, a recovery of an overpayment is against equity and good conscience:

1.  When an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself; or

2.  Was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment.  20 C.F.R. § 404.509.

B.  Return of Payments

The plaintiff argues that the ALJ and the Appeals Council erred in two ways.  First, there was not substantial evidence of a DIB overpayment both because there was not a proper review of the plaintiff's earnings record and also because the additional wages attributed to the plaintiff were not due to employment but, rather, to "break time."  Second, if there was substantial evidence of a DIB overpayment, collection of that overpayment would be against equity and good conscience.

As to the plaintiff's first challenge to the finding of an overpayment, the plaintiff states that the plaintiff's

earnings exceeded the monthly allowable earnings on only two occasions. There is no record citation for this claim, nor does it appear to be legally relevant. The record evidence reflects that the plaintiff's earnings exceeded the substantial gainful activity level of blind individuals on multiple months. R. 58-60. In addition, the plaintiff was no longer entitled to DIB the first month his monthly earnings exceeded the allowable earnings level for blind individuals. R. 57.

The plaintiff's second challenge to the finding of an overpayment is that because the additional money he received was for "break time," it should not be considered when evaluating earnings for SGA purposes. DI 10505.010C of the Commissioner's Program Operations Manual System (POMS) states that sick and vacation pay should not be considered when evaluating earnings for SGA purposes. It states: "When evaluating earnings for substantial gainful activity purposes, consider only earnings derived from actual work activity for the month under consideration." On August 30, 2012, the Court issued an order asking for additional memoranda on the question whether break times should be considered the same way as sick and vacation pay even though it is not mentioned in the POMS.

The Commissioner responded that the Office of Program Development and Research, the agency component responsible for interpreting POMS DI 10505.010, treats paid breaks as part of an

employee's salary because the employee is actually working when given break time whereas sick and vacation pay are for a non-work day.  The Commissioner argued that the agency's practice is consistent with the Department of Labor's policy under the Fair Labor Standards Act of counting rest periods of short duration as hours worked.  This interpretation of its own regulations is reasonable and the Court will defer to them.  The Court finds, therefore, that there was substantial evidence of a DIB overpayment.

      The remaining issue is whether the Commissioner should have waived recovery of the overpayment as against equity and good conscience.  The plaintiff argues that the Commissioner should have done so for two reasons: (1) the plaintiff's situation fits within section 1 of the definition because he relinquished a valuable right in reliance on his continued payments; and (2) the regulation's definition of "against equity and good conscience" is too narrow and his situation fits within the appropriate definition of that phrase.[2]

      With respect to the first reason, the plaintiff claims that he lost a valuable benefit, his disability benefits, because he was relying on the benefits he was receiving because had the SSA acted more promptly and cut off his benefits, he would have

---

[2] There is no contention that the separate household provision applies here.

simply reapplied immediately and limited his work hours to recoup the benefit, as he did in 2004.

The plaintiff admits, however, that this theory is far afield from the paradigm case that the regulation seems to have in mind. The classic example of a relinquished valuable benefit would be someone who quit a job because she was relying on benefits; when it turned out that she was not eligible for the benefits, it would be inequitable to recoup the overpayment when the claimant can no longer find employment.

The principle behind this section of the regulation is that claimants should not be punished for reasonably changing their behavior in reliance on their benefits, only to later see their benefits reclaimed by the government. Here, the plaintiff did not alter his behavior but relied on his benefits in the sense that the continued benefit payments prevented him from reapplying for benefits. The Court concludes that the plaintiff's situation does not fit within the regulation.

The plaintiff's final argument – that the regulation's definition of "against equity and good conscience" is too narrow – involves an application of <u>Chevron v. Natural Resources Defense Council</u>, 467 U.S. 837, 843 (1984). Under <u>Chevron</u>, the Court must first decide if Congress, through the statute, has addressed the precise question at issue. If the statute is silent or ambiguous with respect to the specific issue, the question for the Court is

whether the agency's answer is based on a permissible construction of the statute. The agency's interpretation should prevail as long as it is a reasonable interpretation of the statute, not necessarily the only possible interpretation nor even the one deemed most reasonable by the Courts. Id.; see also Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 218 (2009).

The text of the Social Security Act is silent as to the meaning of the phrase equity and good conscience. Unless otherwise defined, statutory words "will be interpreted as taking their ordinary, contemporary meaning." Perrin v. United States, 444 U.S. 37, 42 (1979).

The ordinary meaning of the phrase equity and good conscience anticipates that individual cases will be decided by applying general precepts of justice and fairness to the particular circumstances rather than channeling the decision through rigid and specific rules. The Court concludes that the agency's regulation, which rigidly defines equity and good conscience to a few discrete situations, is not a reasonable interpretation of the statute.

There is no Third Circuit precedent on the issue; but, three other circuits have dealt with the issue. The Eighth Circuit in Groseclose v. Bowen, 809 F.2d 502, 506 (8th Cir. 1987) and the Ninth Circuit in Quinlivan v. Sullivan, 916 F.2d 524, 527, (9th Cir. 1990) have held that the regulation is not an

appropriate interpretation of the equity and good conscience language. In <u>Valley v. Comm'r of Soc. Sec.</u>, 427 F.3d 388 (6th Cir. 2005), the Sixth Circuit has considered the equity and good conscience issue within the SSA's regulatory framework and adopted it without much comment on the validity of the regulation itself.

<u>Groseclose</u> involved the Secretary of Health and Human Services withholding a retiree's social security retirement benefits in order to recoup an overpayment of child insurance benefits to the retiree's daughter. The retiree had no knowledge that his daughter was receiving overpayment of her benefits, and his daughter did not live in the same household. The court determined that recovery of the overpayment from the claimant would be "against equity and good conscience" under a broadened, "ordinary meaning of the phrase." <u>Id.</u> at 505.

After the Eighth Circuit decided <u>Groseclose</u>, the SSA amended 20 C.F.R. § 404.509 such that the situation of the claimant in <u>Groseclose</u> would be covered under the revised regulations' interpretation of "against equity and good conscience." <u>See</u> Supplemental Security Income for the Aged, Blind, and Disabled; Against Equity and Good Conscience, 53 Fed. Reg. 25481-02 (July 7, 1988) ("For Title II, we are expanding the definition of "against equity and good conscience" at § 404.509 to include an individual who was living in a separate household

from that of the overpaid individual and who did not receive the overpayment").

In Quinlivan, the plaintiff received an overpayment of Social Security Title II benefits between 1980-1982 while he was incarcerated. The SSA demanded repayment, and the plaintiff requested reconsideration and a waiver of repayment. By the time Mr. Quinlivan was released from prison in 1985, the SSA had not reached a decision regarding his appeal. Upon release, Mr. Quinlivan spent his savings, including the money received as an overpayment, to cover basic living expenses.

Unlike in Groseclose, there was no issue of notice of knowledge of overpayment in Quinlivan. The Court held:

> Denial in Mr. Quinlivan's waiver request is inconsistent with the equitable principles expressed in the statute of its history. Upon release from prison, Mr. Quinlivan had no material goods, no means of transportation, and no income . . . . The only way [Mr. Quinlivan] could qualify for state general assistance benefits was to spend his savings to a minimal level. By the time the SSA made its initial decision on the waiver request in 1987, five years had elapsed since his first request for consideration. It is unfair to have expected Mr. Quinlivan to hold the funds for more than two years after his release, without any prospect of steady income and with eligibility for general assistance dependent on his level of assets. Given this unusual set of circumstances, we conclude that requiring Quinlivan to repay the funds now would be against equity and good conscience.

Quinlivan, 916 F.2d at 527.

11

The Court concludes that the Groseclose court makes a good case that the legislative history, sparse thought it is, suggests that Congress intended to make recovery more equitable, as opposed to rigidly formulaic, when it included the equity and good conscience language. See Groseclose, at 505-506 ("Provision is made for making more equitable the recovery by the Federal Government of incorrect payment to individuals"); (expressing concern over allowing recovery from persons who are "perfectly innocent of any wrong doing"); (the language "broadens the Secretary's authority to waive adjustment or recovery of overpayments.") (citing legislative history, internal citations omitted).

The plain language of the statute, equity and good conscience, is apparently designed to give the Secretary and reviewing Courts case by case discretion to determine when repayment actions should be waived. Equity and good conscience is language of unusual generality, and the regulation that tries to limit the meaning of the phrase to only a few types of situations is an unreasonably narrow interpretation of that language.

Under a broader interpretation of the equity and good conscience standard, the Court concludes that the SSA's repayment action should be waived because it violates the equity and good conscience standard for a number of reasons.

The amount the SSA is seeking in repayment, over $87,000, is a huge sum compared to the amount of excess earnings that the plaintiff received above the eligibility threshold for SGA. Additionally, the reason the amount of repayment the SSA seeks to recover grew to such a large figure is that the SSA did not notify the plaintiff of the fact that his wages had rendered him ineligible for benefits until years after that fact could have been discovered by the SSA.

The plaintiff was deemed ineligible for benefits as of April 2000 and the plaintiff reapplied for and was granted DIB in July 2004. At all times, the plaintiff would have been eligible for DIB due to his blindness so long as he had kept his income below the eligibility threshold for SGA.

As early as 2001, when the plaintiff's employer made the retroactive payment that rendered him ineligible for DIB and that payment was reported to the SSA, the SSA could have determined the plaintiff's ineligibility and acted accordingly.[3] Instead, the SSA did not act on the information until 2005, when

---

[3] The plaintiff promptly notified the SSA about the retroactive payment that led to his ineligibility. Tr. 49. Both the ALJ and the Appeals Council found the plaintiff to be without fault in this matter, and even the SSA Waiver Determination, which took the most uncharitable view toward the plaintiff, wrote that with respect to his wages in 2000 and the retroactive payment in 2001, the plaintiff "made no incorrect statements, he did not fail to furnish information that was material." Tr. 60. Based on the record, the Court concludes that the SSA could have determined that there was an overpayment and notified the plaintiff of that years before it eventually did so.

the SSA first notified the plaintiff of the overpayment. It is this delay that led to the accrual of the bulk of plaintiff's overpayments.

Had the SSA acted on the plaintiff's ineligibility more promptly, the plaintiff could have at that time adjusted his income and reapplied for benefits, just as he eventually did in 2004. Under this scenario, the plaintiff would have been eligible for and legitimately received many of the benefits the SSA now seeks to recover in this repayment action.

The plaintiff raised this precise issue in trying to argue that this repayment action violates the equity and good conscience standard as defined by the SSA's own regulations. Although the plaintiff's argument is unavailing for that purpose, the argument does cut strongly in the plaintiff's favor under a broader definition of the equity and good conscience standard.

It is true that even if the SSA had acted promptly when the plaintiff's employer made the retroactive payment in 2001, there still would have been a potential repayment action because the retroactive payment disrupted the plaintiff's eligibility for benefits going back to April of 2000. However, that hypothetical repayment action would have been for a much smaller amount, both in absolute terms and in proportion to the amount of earnings the plaintiff received above the SGA threshold, and would have to be

14

analyzed on its own terms and may well be a different case under the equity and good conscience standard.

The Court also notes that the plaintiff carefully maintained his work records and that his eligibility for benefits would not have been disturbed if his employer had not erroneously withheld some of his wages in the first instance and then retroactively paid them to the plaintiff.

As neither the plaintiff's initial ineligibility for benefits nor the SSA's delay in acting on that ineligibility were within the plaintiff's control, the Court finds that it would be against equity and good conscience to make the plaintiff repay the large amount of benefit overpayments that accrued as a result of that confluence of circumstances.

This conclusion is consistent with other cases where a broader conception of the equity and good conscience test has been applied. In <u>Villate v. Sullivan</u>, 862 F. Supp. 514 (D.D.C. 1994), the District Court of the District of Columbia found that seeking repayment from a widow who received overpayments from SSA once her government pension took effect violated equity and good conscience. It was undisputed that the claimant's social security benefits should have been reduced to account for her government pension. <u>Id.</u> at 515. However, the <u>Villate</u> Court found that the claimant was without fault and the equities favored her because of the compelling facts and circumstances in

the case, including the fact that it was the SSA's actions that contributed to the overpayments because the plaintiff relied on a social security employee to help her fill out the form disclosing her pension and that employee failed to follow proper protocol in processing it.  Id. at 521.

In Audet v. Astrue, 4:08CV3220, 2009 WL 1664598 (D. Neb. June 11, 2009), the District Court of Nebraska found that seeking repayment violated equity and good conscience in a case where the claimant received overpayments because she earned above the threshold for SGA but her ineligibility for benefits was not detected promptly because she failed to timely report her income. The Audet Court found that the claimant was without fault because she suffered from mental afflictions, including severe anxiety and post-traumatic stress symptoms, that prevented her from understanding her reporting obligations and knowing that she was receiving overpayments; as a result, the Audet Court held that recovery of the overpayments would be against equity and good conscience.  Id at *7.

Here, just as in Villate, the SSA had the necessary information to cut off the accrual of the overpayments and failed to do so, and just as in Audet, the plaintiff did not know he was receiving overpayments because his income had exceeded the SGA threshold.

Because of the compelling facts and circumstances of this case, the Court concludes that recovery of the overpayments made to Stolztfus would be against equity and good conscience.

An appropriate order issues separately.